UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CV-0057BR

STEVEN VERONA, MYGALLONS LLC,
and ZENACON LLC,

              Plaintiffs,

vs.

U.S. BANCORP, U.S. BANK VOYAGER
FLEET SYSTEMS INC., and K.E. AUSTIN
CORP.,

              Defendants.

**ANSWER OF DEFENDANTS U.S.
BANCORP AND VOYAGER FLEET
SYSTEMS, INC. TO AMENDED
COMPLAINT**

Defendants U.S. Bancorp and Voyager Fleet Systems, Inc., which is mistakenly identified in the caption as U.S. Bank Voyager Fleet Systems Inc. (collectively "Voyager"), for their Answer to the Amended Complaint of Plaintiffs Steven Verona ("Verona"), MyGallons LLC ("MyGallons") and Zenacon LLC ("Zenacon"), state and allege as follows:

Deny each and every allegation, matter and thing alleged in Plaintiffs' Amended Complaint except that which is hereinafter admitted, qualified or otherwise answered.

Lack sufficient information to admit or deny the allegations in the first, unenumerated paragraph in the Amended Complaint as to what Plaintiffs and their attorneys reviewed before preparing the Amended Complaint.

## Overview of the Action

1.    In response to the allegations in Paragraph 1 of the Amended Complaint, admit that the Plaintiffs allege in the Amended Complaint that they are entitled to damages, and deny the remaining allegations.

2.     In response to Paragraph 2, lack sufficient information to admit or deny whether MyGallons is Verona's "brain-child" and whether MyGallons has enabled any consumers to purchase "tomorrow's gas at today's prices."

3.     In response to Paragraph 3, lack sufficient information to admit or deny the allegations regarding how Plaintiffs intended that MyGallons would operate, and state that prior to June 30, 2008, Voyager was unaware that Plaintiffs intended to operate MyGallons by issuing gas cards to consumers, and deny that MyGallons' business plan would have allowed it to "break even" on gas prices whether prices rose or fell.

4.     In response to Paragraph 4, lack sufficient information to admit or deny how Plaintiffs "envisioned" MyGallons to work, and deny the remaining allegations.

5.     Deny the allegations in Paragraph 5.

6.     In response to Paragraph 6, deny that anyone at Voyager referred Mr. Verona to K.E. Austin Corp. d/b/a GoGas Universal ("GoGas") or Phil Dorroll ("Dorroll"), admit that GoGas has authority to market a Voyager/GoGas co-branded fleet gas card under the conditions set forth in relevant agreements, state that GoGas must send all such customer applications it obtains to Voyager for approval, and deny the remaining allegations.

7.     In response to Paragraph 7, lack sufficient information to admit or deny the allegation regarding Dorroll's position with GoGas, admit that generally, GoGas provides sales and administrative support to fleet customers, while Voyager Fleet Systems, Inc. provides approved credit lines and card printing, and deny the remaining allegations.

8.     In response to Paragraph 8, admit that a contract exists between Voyager and GoGas, which speaks for itself regarding the obligations as between Voyager and GoGas.

9.     Deny the allegations as stated in Paragraph 9.

10. Deny the allegations as stated in Paragraph 10.

11. In response to Paragraph 11, admit only that Verona and Zenacon signed an application contract approved by Voyager following a basic review by Voyager's credit department, which was expressly for use with a small commercial fleet program, in which Voyager would extend limited credit to Zenacon, and that cards were issued for that limited program, which had nothing to do with issuing cards to consumers so far as Voyager was aware. Deny the remaining allegations.

12. In response to Paragraph 12, admit on information and belief that Plaintiffs issued a press release regarding MyGallons on June 30, 2008, describing a consumer oriented gas card program supposedly involving Voyager, despite the fact that MyGallons had no contract in place with Voyager and had never disclosed the consumer nature of the program to Voyager. Lack sufficient information to admit or deny Plaintiffs' allegations concerning the then-current price of gasoline and the specific media inquiries and published stories that occurred following the June 30, 2008 press release.

13. In response to Paragraph 13, lack sufficient information to admit or deny the allegations regarding Google searches and membership applications experienced by MyGallons, deny that MyGallons was "poised to become a substantially large and extremely profitable operation", and deny the characterization of Dr. Micu's opinions, which are in any event inadmissible under the Federal Rules of Evidence.

14. Deny the allegations as stated in Paragraph 14.

15. In response to Paragraph 15, lack sufficient information to admit or deny the allegations as to whether MyGallons refunded money to consumers or stopped signing up new customers, and deny the remaining allegations.

16. In response to Paragraph 16, lack sufficient information to admit or deny the allegations regarding negative ratings and media attention received by Plaintiffs, and regarding any state attorney general investigations that may have taken place, and deny the remaining allegations.

17. In response to Paragraph 17, lack sufficient information to admit or deny the allegations regarding media attention to MyGallons and regarding MyGallons' attempts to enter contracts with other banks, and deny the remaining allegations, except admit that MyGallons has never been able to convince any other payment processor to enter a contract to support the consumer program envisioned by Plaintiffs, for reasons having nothing to do with Voyager.

18. Deny the allegations as stated in Paragraph 18.

### Parties

19. Lack sufficient information to admit or deny the allegations in Paragraph 19.

20. Lack sufficient information to admit or deny the allegations in Paragraph 20.

21. Lack sufficient information to admit or deny the allegations in Paragraph 21.

22. In response to Paragraph 22, admit that U.S. Bancorp is a multistate financial services holding company incorporated in the state of Delaware, with its headquarters in Minneapolis.

23. In response to Paragraph 23, admit that Voyager Fleet Systems, Inc. is incorporated in the state of Delaware. It is a wholly-owned subsidiary of U.S. Bank National Association ND.

24. In response to Paragraph 24, admit that GoGas is a North Carolina Corporation with headquarters in Wilmington, North Carolina.

### Jurisdiction and Venue

4

25.     State that the allegations regarding jurisdiction in Paragraph 25 constitute legal conclusions to which no response is required.

26.     In response to Paragraph 26, state that the allegation concerning jurisdiction constitutes a legal conclusion to which no response is required, but to the extent a response may be required, deny that Voyager has extensive operations in the State of North Carolina (although the Voyager gas cards may be used throughout the United States).

27.     In response to Paragraph 27, state that the allegations regarding venue constitute conclusions of law which require no response.

28.     Deny the allegations as stated in Paragraph 28 to the extent they are directed to the Voyager Defendants.

### Factual Allegations

#### *Implementation of the MyGallons Concept*

29.     In response to Paragraph 29, lack sufficient information to admit or deny the allegations regarding what Mr. Verona's "concept" was for MyGallons at any given point in time. Admit that traditional credit card reporting is limited to the date and price of a transaction, and that the two major fuel fleet card Level III processors that own their own networks are Voyager and Wright Express. Lack sufficient information to admit or deny whether Mr. Verona had discussions with Wright Express regarding a "consumer program." Deny the remaining allegations.

30.     Deny the allegations as stated in Paragraph 30, except admit that GoGas is known as a "channel partner" of Voyager.

31.   Deny the allegations as stated in Paragraph 31, and state that the reason for Dorroll's email is because Verona falsely told Dorroll in May 2008 that Voyager had referred him to GoGas.

32.   In response to Paragraph 32, state that Voyager never directed any substantive communication to Plaintiffs until July 1, 2008, but state that Voyager did indicate to Dorroll that a contract needed to be prepared, and that Dorroll communicated that need to MyGallons.

33.   Deny the allegations as stated in Paragraph 33.

34.   In response to Paragraph 34, admit that the Zenacon small commercial fleet application contemplated a small credit limit, states that the application was supported by the personal guarantee of Mr. Verona, was approved by Voyager, and was conditioned on the requirements of that written contract which expressly precluded consumer use of the cards, and deny that Voyager intended to participate in a "pilot program".

35.   In response to Paragraph 35, deny that Zenacon, LLC is a "predecessor" to MyGallons, LLC, and state that the referenced email speaks for itself.

36.   In response to Paragraph 36, admit that Loveridge received an email but deny that Loveridge understood that MyGallons name referred to a new company as opposed to a trade name of Zenacon.

37.   In response to Paragraph 37, admit that Loveridge was aware of the request to use the MyGallons brand on fuel cards, but deny that Loveridge had any understanding at the time that the fuel cards were intended by Plaintiffs to be used for a consumer program.

38.   In response to Paragraph 38, denies that Voyager knowingly took part in any "test program" for a consumer fuel card program, but admit that pursuant to the Zenacon application

contract, cards were issued by Voyager, intended for a small commercial fleet, with the name MyGallons on the card.

39. Lack sufficient information to admit or deny how GoGas addressed invoices to Zenacon, and denies that Defendants received full payment from Zenacon or MyGallons for the Zenacon obligations.

40. Deny the allegations as stated in Paragraph 40.

41. Deny that any second application ever existed, as implied in Paragraph 41.

42. Lack sufficient information to admit or deny the allegations as stated in Paragraph 42.

43. Deny the allegations as stated in Paragraph 43.

44. Lack sufficient information to admit or deny the allegations as stated in Paragraph 44.

45. Lack sufficient information to admit or deny the allegations as stated in Paragraph 45.

### *All Parties Worked Together Extensively to Set Up the Member Based Program*

46. In response to Paragraph 46, deny that GoGas was authorized to provide cards with Voyager or Voyager's logo for issuance by MyGallons to consumers, and otherwise lack sufficient information to admit or deny the allegations, except admit that a card design with the word "MyGallons" was prepared at a time before Voyager was aware that MyGallons was not a dba of Zenacon and that MyGallons intended to issue gas cards to consumers.

47. In response to Paragraph 47, deny that Voyager ever understood, prior to July 1, 2008, that MyGallons intended to issue fuel cards to consumers, and otherwise lack sufficient information to admit or deny the allegations as to how Plaintiffs envisioned the program to work,

and as to specific communications between Plaintiffs and GoGas, but denies the implication that a consumer program of the type alleged would pose no credit risk to Voyager.

48.     Deny the allegations as stated in Paragraph 48.

49.     Deny the allegations as stated in Paragraph 49, except state that the referenced email speaks for itself.

50.     Deny the allegations in Paragraph 50 to the extent they are directed at Voyager, states that the referenced email between GoGas and Verona speaks for itself, and admit based on present knowledge that Dorroll signed up for MyGallons in order to determine the status of the program at the time he signed up, though he did not share that information with Voyager at the time.

51.     In response to Paragraph 51, state that the referenced email speaks for itself, and deny that Voyager was aware prior to July 1, 2008 that MyGallons intended to use fuel cards for consumers (rather than as a sub-marketer to small commercial fleets).

52.     Lack sufficient knowledge to admit or deny the allegations in Paragraph 52.

**_Card Design – Specifications, Language, and Logos are Approved by All Defendants_**

53.     In response to Paragraph 53, admit that GoGas worked with Voyager regarding back-end support for what Voyager understood was a commercial fleet gas card arrangement with Zenacon, and state that the referenced emails speak for themselves.

54.     In response to Paragraph 54, admit that Stebel sent information to GoGas at the request of GoGas, in connection with the work described above.

55.     In response to Paragraph 55, state that the referenced emails speak for themselves.

56.     In response to Paragraph 56, state that the referenced emails speak for themselves.

57. In response to Paragraph 57, admit generally that Plaintiffs and GoGas worked on certain back-end support, in which Voyager participated to some degree but without realizing that the program was intended to issue fuel cards with consumers, but deny that Plaintiffs successfully completed a file transmission testing process.

58. In response to Paragraph 58, lack sufficient information to admit or deny the allegations regarding Dorroll's knowledge, and deny that Voyager ever formed a separate My Gallons account for use with a consumer fuel card program.

59. In response to Paragraph 59, denies that prior to July 1, 2008, Voyager understood that MyGallons intended to provide fuel cards to consumers, admit that 10,000 cards were ordered (which is the minimum number of cards that can be produced at one time), but deny that the cards were ordered by Voyager in anticipation of the launch of any consumer program, and state that the cards were intended to be used for a submarket operation only after a contract had been drafted, approved and signed by Voyager, which never occurred, therefore live cards were never issued.

### *Further Negotiations and Agreements*

60. Lack sufficient information to admit or deny the allegations in Paragraph 60.

61. In response to Paragraph 61, deny that Hutton intended to state to OPIS that Voyager provided the backbone of MyGallons, admit that Hutton retired from Voyager, deny that he is currently providing any services to PriceLock, lack sufficient information to admit or deny whether GasBank USA has changed its business model, and deny that Voyager caused any confidentiality agreement involving MyGallons to be breached.

62.     Lack sufficient information to admit or deny the allegations in Paragraph 62, except admit that rebate programs do exist and state that the terms of the relationship between Voyager and GoGas are governed by a written contract which speaks for itself.

63.     In response to Paragraph 63, state that the referenced rebate agreement speaks for itself.

### No Additional Contract Between US Bank/Voyager and MyGallons Was Needed

64.     In response to Paragraph 64, state that the referenced rebate agreement speaks for itself and deny that it required MyGallons to work exclusively with GoGas, deny that Voyager "wanted to work directly" with MyGallons, and state that Voyager did tell GoGas that in order to permit Zenacon dba MyGallons to serve as a sub-marketer to GoGas, that arrangement would require a special contract with Voyager, which requirement, on information and belief, was communicated by GoGas to Plaintiffs.

65.     In response to Paragraph 65, admit that Voyager never spoke directly to Plaintiffs regarding the need for a contract, prior to July 1, 2008.

66.     Deny the allegations as stated in Paragraph 66, except admit that Voyager did not contact Plaintiffs regarding the required contract prior to July 1, 2008.

67.     In response to Paragraph 67, admit that prior to July 1, 2008, there were no communications between Voyager and Plaintiffs regarding a sub-marketer contract.

68.     In response to Paragraph 68, state that the referenced email speaks for itself.

69.     In response to Paragraph 69, lack sufficient information to admit or deny whether Plaintiffs put anything "on hold" until a contract was presented, but state that the fact that Plaintiffs proceeded with a premature press release and media campaign, despite knowing from GoGas that a contract was required, was not the fault of Voyager.

### The Launch of MyGallons and Defendants' Breaches of Contract

70.     Admit, on information and belief, that on or about June 30, 2008, MyGallons announced in a press release a consumer gas card program claimed to be supported by the Voyager network, even though Plaintiffs had not entered any contract for such a program with Voyager, and under the then-existing agreement with Zenacon, the cards provided to Zenacon could only be issued to a commercial fleet. Deny the remaining allegations.

71.     Lack sufficient information to admit or deny the allegations in Paragraph 71.

72.     Lack sufficient information to admit or deny the allegations in Paragraph 72.

73.     In response to Paragraph 73, state that the referenced email speaks for itself.

74.     Deny the allegations as stated in Paragraph 74.

75.     In response to Paragraph 75, admit that Andrew Toftey, Voyager's corporate counsel, emailed correspondence to Mr. Verona, which was accurate and which speaks for itself.

76.     In response to Paragraph 76, lack sufficient information to admit or deny the allegation that Plaintiffs were shocked by Mr. Toftey's correspondence, and deny the remaining allegations.

77.     In response to Paragraph 77, admit that the parties discussed a conference call after Mr. Toftey's July 1 correspondence, and deny the remaining allegations.

78.     In response to Paragraph 78, admit that Mr. Loveridge circulated an email regarding a conference call, which speaks for itself.

79.     In response to Paragraph 79, admit that the parties conducted a conference call on July 1, 2008, admit that Voyager truthfully stated that it had no contract in place with MyGallons, and advised MyGallons to cease from claiming otherwise. Lack sufficient information to admit or deny whether MyGallons complied with Voyager's request.

80.    In response to Paragraph 80, admit that the business arrangement between Voyager Fleet Systems Inc. and its parent did not permit the support of a consumer based fuel program of the kind apparently intended by Plaintiffs. Deny the remaining allegations.

81.    Deny the allegations as stated in Paragraph 81.

82.    Deny the allegations as stated in Paragraph 82, and state that the referenced Pricelock program is materially different than the consumer program described in MyGallons' press release and website, of which Voyager was unaware until July 1, 2008.

83.    Deny the allegations as stated in Paragraph 83.

### US Bank/Voyager Make False and Misleading Statements to the Press

84.    In response to Paragraph 84, admit that Voyager received a number of media inquiries relating to MyGallons, and that in response to some of those inquiries, Voyager truthfully stated that it had no agreement with MyGallons.

85.    In response to Paragraph 85, deny that Voyager issued any false or defamatory statement regarding Plaintiffs, except admit that Voyager truthfully stated that it had no agreement with MyGallons.

86.    Deny the allegations as stated in Paragraph 86.

87.    Deny the allegations as stated in Paragraph 87.

88.    In response to Paragraph 88, deny that Voyager issued defamatory denials, and state that the referenced email speaks for itself.

89.    Deny the allegations as stated in Paragraph 89, except state that the referenced email reflects Mr. Loveridge's understanding of a plan to have MyGallons serve as a sub-marketer to smaller commercial fleets, rather than knowledge that MyGallons intended to introduce a consumer fuel card program.

90.     Deny the allegations as stated in Paragraph 90.

91.     In response to Paragraph 91, admit that MyGallons contacted Voyager regarding a joint press release, admit that Plaintiffs made allegations that MyGallons was damaged but deny that those allegations have merit, and deny the remaining allegations.

92.     In response to Paragraph 92, admit that Plaintiffs made allegations that MyGallons was damaged but deny that those allegations have merit, and deny that Voyager promised to author a joint press release with MyGallons although it did initially discuss that possibility.

93.     In response to Paragraph 93, admit that Mr. Verona sent email correspondence to Voyager on July 7, which speaks for itself, but which was not accurate.

94.     In response to Paragraph 94, admit that Voyager declined to issue a joint press release, and deny the remaining allegations.

95.     Deny the allegations as stated in Paragraph 95.

96.     Deny the allegations as stated in Paragraph 96.

97.     In response to Paragraph 97, lack sufficient information to admit or deny what rating the South Florida Better Business Bureau assigned to MyGallons at a given point in time, and whether the issue was discussed in certain media reports.

98.     In response to Paragraph 98, lack sufficient information to admit or deny what was published in the Consumerist on July 3, 2008, but admit that Voyager had declined to enter an agreement with MyGallons.

99.     Lack sufficient information to admit or deny the allegations in Paragraph 99.

100.    In response to Paragraph 100, deny that Voyager had issued any false information to the Better Business Bureau which needed to be "corrected".

101.  Lack sufficient information to admit or deny the allegations as stated in Paragraph 101, except deny that Plaintiffs were damaged by any action or inaction of Voyager.

102.  In response to Paragraph 102, admit that OPIS issued an article purporting to quote Regan Hutton, deny that Mr. Hutton intended to confirm whether Voyager had a relationship with MyGallons for a consumer program (indeed, Mr. Hutton had never even heard of MyGallons prior to the call from OPIS), and deny the remaining allegations.

103.  In response to Paragraph 103, admit on information and belief that Dorroll of GoGas authorized Verona to use a statement which was drafted by Verona, lack sufficient information to admit or deny whether the statement was widely disseminated, and deny the remaining allegations.

### *Fallout and Damages*

104.  In response to Paragraph 104, deny that Voyager failed to honor any MyGallons contract (because there was none involving Voyager), deny that Voyager made false or defamatory statements, and deny that MyGallons has suffered damage due to any action or inaction by Voyager. Lack sufficient information to admit or deny the specific bullet points set forth in that Paragraph, describing certain inquiries, costs, publications and efforts to enter into contracts with third parties.

105.  In response to Paragraph 105, lack sufficient information to admit or deny the allegations as to MyGallons popularity, and deny the remaining allegations.

106.  In response to Paragraph 106, admit that Plaintiffs have submitted expert reports purporting to opine on how many members may have signed up for MyGallons and lost profits, but deny that those reports are accurate and state that the opinions are defective and inadmissible. Deny the remaining allegations.

107.	Deny the allegations as stated in Paragraph 107.

108.	In response to Paragraph 108, lack sufficient information to admit or deny whether Mr. Verona self-funded MyGallons, admit that Verona prepared a variety of projections, none of which were realistic, and deny the remaining allegations.

109.	In response to Paragraph 109, lack sufficient information to admit or deny whether MyGallons may have to duplicate costs or whether there are newly perceived risks, and deny the remaining allegations.

110.	Lack sufficient information to admit or deny the allegations in Paragraph 110, except deny that Voyager wrongfully terminated or defamed MyGallons, or otherwise caused damage to Plaintiffs.

111.	In response to Paragraph 111, admit on information and belief that MyGallons has not found an alternative payment network, but deny that MyGallons' failure has anything to do with Voyager.

### Count I:

### Breach of Contract
### (against all Defendants)

112.	In response to Paragraph 112, Voyager Defendants incorporate by reference their previous responses.

113.	Deny the allegations as stated in Paragraph 113.

114.	Deny the allegations as stated in Paragraph 114, to the extent Plaintiffs allege that GoGas had actual and apparent authority to contract with MyGallons for access to the Voyager network for use with a consumer program (in contradiction of the terms in the existing application contract with Zenacon).

115.	Deny the allegations as stated in Paragraph 115.

15

116.     Deny the allegations as stated in Paragraph 116.

## Count II:

### Promissory Estoppel
### (against all Defendants)

117.     In response to Paragraph 117, Voyager Defendants incorporate their previous responses.

118.     In response to Paragraph 118, deny the allegations made as to Voyager, and state that the allegations as to GoGas require no response from Voyager.

119.     Deny the allegations as stated in Paragraph 119.

120.     Deny the allegations as stated in Paragraph 120.

121.     Deny the allegations as stated in Paragraph 121.

## Count III:

### Tortious Interference with Existing Contractual Relations
### (against U.S. Bank and Voyager)

122.     In response to Paragraph 122, Voyager Defendants incorporate their previous responses.

123.     In response to Paragraph 123, lack sufficient information to admit or deny the allegations regarding contracts between MyGallons and GoGas, and deny the remaining allegations.

124.     In response to Paragraph 124, lack sufficient information to admit or deny the allegations regarding contracts entered between MyGallons and GoGas, and deny the remaining allegations.

125.     Deny the allegations as stated in Paragraph 125.

126.     Deny the allegations as stated in Paragraph 126.

127.   Deny the allegations as stated in Paragraph 127.

128.   Deny the allegations as stated in Paragraph 128.

### Count IV:

### Tortious Interference with Existing Contractual Relations
### (against all Defendants)

129.   In response to Paragraph 129, Voyager Defendants incorporate their previous responses.

130.   In response to Paragraph 130, lack sufficient information to admit or deny the allegations that MyGallons entered contractual relationships with 6,500 consumers, and the price paid, if any.

131.   Deny the allegations as stated in Paragraph 131.

132.   Deny the allegations as stated in Paragraph 132.

133.   In response to Paragraph 133, lack sufficient information to admit or deny whether Plaintiffs issued refunds to any customers, and deny the remaining allegations.

134.   Deny the allegations as stated in Paragraph 134.

### Count V:

### Tortious Interference with Prospective Contractual Relations
### (against all Defendants)

135.   In response to Paragraph 135, Voyager Defendants incorporate their previous responses.

136.   In response to Paragraph 136, lack sufficient information to admit or deny the allegations regarding popularity of the MyGallons' website, the number of consumers who entered contracts with MyGallons, or the cost of membership.

137.    In response to Paragraph 137, lack sufficient information to admit or deny the allegations regarding whether customers submitted their names to MyGallons, and deny the remaining allegations.

138.    Deny the allegations as stated in Paragraph 138.

139.    Deny the allegations as stated in Paragraph 139.

140.    In response to Paragraph 140, lack sufficient information to admit or deny whether Plaintiffs issued refunds to any customers, and deny the remaining allegations.

141.    Deny the allegations as stated in Paragraph 141.

### Count VI:

### Defamation
### (against U.S. Bank and Voyager)

142.    In response to Paragraph 142, Voyager Defendants incorporate their previous responses.

143.    In response to Paragraph 143, admit that Voyager made a statement on July 3, 2008 which speaks for itself and which was accurate.

144.    Deny the allegations as stated in Paragraph 144.

145.    In response to Paragraph 145, lack sufficient information to admit or deny what ratings were made by the South Florida Better Business Bureau, whether investigations were pursued by state attorneys general against Plaintiffs, and whether Plaintiffs have had difficulty finding other banks to sponsor a consumer gas card program, and deny the remaining allegations.

146.    Deny the allegations as stated in Paragraph 146.

147.    Deny the allegations as stated in Paragraph 147.

148.    Deny the allegations as stated in Paragraph 148.

149.    Deny the allegations as stated in Paragraph 149.

## Count VII:

### Disparagement/Injurious Falsehood
### (against U.S. Bank and Voyager)

150. In response to Paragraph 150, Voyager Defendants incorporate their previous responses.

151. Deny the allegations as stated in Paragraph 151.

152. Deny the allegations as stated in Paragraph 152.

153. In response to Paragraph 153, lack sufficient information to admit or deny whether MyGallons stopped signing up new members or issued refunds to consumers, and deny the remaining allegations.

154. Deny the allegations as stated in Paragraph 154.

155. Deny the allegations as stated in Paragraph 155.

## Count VIII:

### Publicity Placing Persons In A False Light
### (against U.S. Bank and Voyager)

156. In response to Paragraph 156, Voyager Defendants incorporate their previous responses.

157. Deny the allegations as stated in Paragraph 157.

158. Deny the allegations as stated in Paragraph 158.

159. Deny the allegations as stated in Paragraph 159.

160. Deny the allegations as stated in Paragraph 160.

161. Deny the allegations as stated in Paragraph 161.

162. Deny the allegations as stated in Paragraph 162.

## Count IX:

## Violation of the Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. Ann. 75-1.1) (against All Defendants)

163. In response to Paragraph 163, Voyager Defendants incorporate their previous responses.

164. Deny the allegations as stated in Paragraph 164.

165. Deny the allegations as stated in Paragraph 165.

166. Deny the allegations as stated in Paragraph 166.

167. Deny the allegations as stated in Paragraph 167.

168. Deny the allegations as stated in Paragraph 168.

169. In response to Plaintiffs' Prayer for Relief, deny that Plaintiffs are entitled to any relief as against Voyager.

### FIRST AFFIRMATIVE DEFENSE

Allege that Plaintiffs' Amended Complaint fails to state a claim upon relief can be granted, in whole or in part.

### SECOND AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by mutual mistake of fact.

### THIRD AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by the equitable doctrines of waiver, estoppel, and unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs failed to mitigate their claimed damage.

## FIFTH AFFIRMATIVE DEFENSE

Allege that if Plaintiffs sustained any damage, which is denied, such damage was not caused or contributed to by Voyager, but was caused by Plaintiffs' own actions or inactions, or the actions or inactions of others.

## SIXTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by Plaintiffs' own breach of their duties.

## SEVENTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by Plaintiffs' misrepresentations regarding the nature of the intended MyGallons program.

## EIGHTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by failure of consideration.

## NINTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by the statute of frauds.

## TENTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by impossibility.

## ELEVENTH AFFIRMATIVE DEFENSE

Allege that Voyager acted all times in good faith and was truthful in its communications at issue.

## TWELFTH AFFIRMATIVE DEFENSE

Allege that Plaintiffs' claims may be barred, in whole or in part, by applicable legal privileges or immunities.

## THIRTEENTH AFFIRMATIVE DEFENSE

Voyager Defendants reserve their right to assert any additional affirmative defenses that may be discovered during the course of additional investigation and discovery.

**WHEREFORE,** U.S. Bancorp and Voyager Fleet Systems, Inc. pray that Plaintiffs take nothing by virtue of their Amended Complaint, that said Amended Complaint be dismissed with prejudice, that Voyager Defendants recover their attorneys fees and costs herein, and for such other relief as the Court deems just and equitable.

## COUNTERCLAIM

Defendant Voyager Fleet Systems, Inc. ("Voyager"), for its Counterclaim against Plaintiffs, states and alleges as follows:

170. Voyager is a corporation located in the State of Texas and is incorporated in Delaware.

171. KE Austin (GoGas) is a corporation located in the State of North Carolina.

172. Zenacon, LLC (Zenacon) claims to be a company incorporated in the State of Ohio.

173. Steven Verona (Verona) claims to be an individual residing in the State of Pennsylvania.

174. MyGallons, LLC (MyGallons) claims to be a company headquartered in Miami, Florida.

175. Zenacon entered an application contract with Voyager for use of commercial fleet gas cards on credit, which line of credit was personally guaranteed by Verona, who signed the application contract obligating himself individually as well as on behalf of Zenacon.

176. In its application for a fleet gas card, Zenacon represented that it was a "service" company, and agreed that the gas cards would be used for business purposes and not for personal, family or household purposes.

177. Zenacon used the card for gas purchases, but has failed to pay for use of the Voyager gas cards.

178. In June, 2008, in response to inquiries from GoGas, Voyager began working on a written contract for possible use with MyGallons. However, Voyager advised GoGas that Voyager gas cards could not be issued to consumers.

179. On or about June 30, 3008, before Voyager even had an opportunity to complete or circulate a draft contract (which in any event was being designed for use only with a commercial fleet as opposed to consumers), MyGallons prematurely issued a press release announcing a business relationship with Voyager.

180. Voyager truthfully responded to subsequent media inquiries that it had not entered an agreement with MyGallons for a consumer gas card program.

181. MyGallons subsequently issued press releases falsely accusing Voyager of misrepresenting its relationship (or lack thereof) with MyGallons, and posted such press releases on its internet website (www.MyGallons.com), where they remain published as of the present time.

## COUNT I

### Defamation/Injunctive Relief
### (Against MyGallons and Verona)

182. Voyager incorporates by reference the prior allegations in its Counterclaim.

183. MyGallons has made false allegations regarding Voyager, including that Voyager falsely denied that it had a contractual relationship with MyGallons for a consumer gas card program, which continued to be published on MyGallons' website for a period of time.

184. Unless MyGallons is enjoined from continuing to publish false allegations regarding Voyager, Voyager will be irreparably harmed, for which injury Voyager has no speedy and adequate remedy at law.

185. Voyager therefore seeks an order restraining MyGallons, and all persons and entities acting in concert with it (including Verona), and all its successors, from continuing to publish false allegations regarding Voyager, including the false allegation that Voyager has falsely denied having entered a contract with MyGallons for a consumer gas card program.

## COUNT II

### Breach of Contract
### (Against Verona and Zenacon)

186. Voyager incorporates by reference the prior allegations in its Counterclaim.

187. Zenacon has breached its contract with Voyager by failing to pay when due charges on gas cards issued to it pursuant to an application contract, in the total amount of $1,486.84.

188. Verona is personally obligated to pay the amount due from Zenacon, because he signed the application contract individually as well as on behalf of Zenacon.

**WHEREFORE,** Voyager Fleet Systems, Inc. demands judgment against Plaintiffs for its damages to be proved, prejudgment interest as allowed by law, an injunction reasonably enjoining MyGallons and Verona from publishing false information regarding Voyager Fleet Systems, Inc., attorney's fees and costs of this action as allowed by law, and for such other relief as the Court may deem just and equitable.

Respectfully submitted this 4th day of January, 2010.

**BASSFORD REMELE**
**A Professional Association**

By: /s/ Lewis A. Remele, Jr.

Lewis A. Remele, Jr. (MN License #90724)
Christopher R. Morris (MN License #230613)
Paula M. Semrow (MN License #0339131)
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota  55402-3707
(612) 333-3000
lremele@bassford.com
cmorris@bassford.com
psemrow@bassford.com

and

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

/s/ Johnny M. Loper

Johnny M. Loper  (NCSB No. 15533)
P. O. Box 831
Raleigh, NC 27602
919-755-2116 (direct dial)
919-755-6056 (fax)
jloper@wcsr.com

*ATTORNEYS FOR DEFENDANTS U.S. BANCORP AND*
*U.S. BANK VOYAGER FLEET SYSTEMS, INC.*

## CERTIFICATE OF SERVICE
## CM/ECF – Mixed Service

I hereby certify that on *January 4, 2010*, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

- **Marcus Samuel McGee**
  smcgee@ncadvocates.com,klawton@ncadvocates.com
- **Andrew Kent McVey**
  amcvey@murchisontaylor.com
- **Michael Murchison**
  mmurchison@murchisontaylor.com
- **Lewis A. Remele , JR**
  lremele@bassford.com,loretta@bassford.com
- **Douglas M. Risen**
  drisen@bm.net,gelliott@bm.net,jpolakoff@bm.net
- **Sherrie R. Savett**
  ssavett@bm.net,sdavis@bm.net,mgatter@bm.net
- **Paula M. Semrow**
  psemrow@bassford.com
- **Christopher R. Morris**
  cmorris@bassford.com
- **Russell D. Paul**
  rpaul@bm.net

I further certify that on *January 4, 2010*, I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participants, addressed as follows:

**CHRISTOPHER E. DOUGHERTY**
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
1845 WALNUT STREET
17TH FLOOR
PHILADELPHIA, PA 19103

**HOWARD M. KLEIN**
CONRAD O'BRIEN GELLMAN & ROHN PC
1515 MARKET ST.
16TH FLOOR
PHILADELPHIA, PA 19102

**JOEL MATTHEW WERTMAN**
MARSHALL, DENEHEY, WARNER, COLEMAN & GOGGIN
1845 WALNUT STREET
PHILADELPHIA, PA 19103

_____/s/ Johnny M. Loper_____
Johnny M. Loper, NC State Bar No. 15533