UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO: 7:09-CV-057-BR

| | |
|---|---|
| STEVEN VERONA, MYGALLONS LLC, and ZENACON LLC, ) ) ) Plaintiffs, ) v. ) ) ) U.S. BANCORP, U.S. BANK VOYAGER ) FLEET SYSTEMS INC., and K.E. AUSTIN ) CORP., ) ) Defendants. ) | ORDER |

This matter is before the court on defendants U.S. Bancorp and Voyager Fleet Systems, Inc.'s (collectively "defendants") motion pursuant to Rule 50 of the Federal Rules of Civil Procedure or, alternatively, pursuant to Rules 59 and 60. Plaintiff MyGallons LLC ("MyGallons") filed a response in opposition, and defendants replied.

On 18 October 2011, the jury rendered its verdict, awarding (1) MyGallons $4,000,000 on its defamation claim against defendants and (2) Voyager Fleet Systems, Inc. ("Voyager") $1,046 on its breach of contract claim against plaintiff Steven Verona and his company plaintiff Zenacon LLC ("Zenacon"). In addition, the jury concluded that defendants did not breach any contract with Zenacon or MyGallons and that MyGallons is not entitled to invoke the doctrine of promissory estoppel to enforce any agreement with defendants. On 11 November 2011, defendants filed the instant motion.

The court considers first defendants' renewed motion for judgment as a matter of law pursuant to Rule 50(b). The standard the court employs for a Rule 50 motion is the same as that

for a Rule 56 motion for summary judgment. Dennis v. Columbia Colleton Med. Ctr., Inc., 290

F.3d 639, 644 (4th Cir. 2002).

> [W]hen a jury has returned a verdict, the district court may grant a
> Rule 50(b) motion for judgment as a matter of law only if,
> "viewing the evidence in a light most favorable to the non-moving
> party (and in support of the jury's verdict) and drawing every
> legitimate inference in that party's favor, the only conclusion a
> reasonable jury could have reached is one in favor of the moving
> party." *Int'l Ground Transp. v. Mayor & City Council of Ocean
> City*, 475 F.3d 214, 218–19 (4th Cir. 2007). If reasonable minds
> could differ, we must affirm the jury's verdict. *Dennis*, 290 F.3d at
> 645. In drawing all reasonable inferences in favor of the
> non-movant, a court may not weigh the evidence or assess the
> credibility of the witnesses. *Id.*

Pitrolo v. Cnty. of Buncombe, NC, 407 Fed. Appx. 657, 659 (4th Cir. 2011) (unpublished).

Initially, defendants contend that they are entitled to judgment as a matter of law on

MyGallons's defamation claim because the statements at issue were substantially true. (Mem.,

DE # 243, at 4-7.) As the court instructed the jury on the defamation issue, in relevant part:

> A statement or communication is false if it is not
> substantially accurate. Substantial accuracy does not require every
> word to be true. A statement or communication is substantially
> accurate if its substance or gist is true.

(DE # 229, at 21.) "Where there is no dispute as to the underlying facts, the question of whether

a statement is substantially accurate is one of law for the court." Jadwin v. Minneapolis Star &

Tribune Co., 390 N.W.2d 437, 441 (Minn. Ct. App. 1986) (citation omitted).[1]

Three "desk statements" that defendants communicated are at issue:

> U.S. Bank Voyager Fleet Systems does not have a contract with
> [sic] to do business with MyGallons.com. We did not authorize
> the use of our name in association with this venture and we are not
> affiliated with this company. (Pls.' Ex. 48.)

---

[1] The court has previously found that Minnesota law applies to the defamation claim. (3/29/11 Order, DE # 169, at 17 & n.6.)

> Neither U.S. Bank National Association ND, nor Voyager Fleet
> Systems, Inc. have a contract to do business with MyGallons.com,
> LLC, and there are no ongoing negotiations to enter into any
> agreement with MyGallons. (Pls.' Ex. 54.)
>
> Neither U.S. Bank National Association ND, nor Voyager Fleet
> Systems Inc. has a contract to do business with MyGallons LLC,
> and there are no ongoing negotiations to enter into any agreement
> with MyGallons.
> We did have a commercial fleet fuel card contract with Zenacon
> LLC through our partnership with third-party marketer GOGAS
> Universal, however it was for the exclusive purpose of providing
> commercial fleet fueling and maintenance cards, not consumer
> cards. (Jt. Ex. 63.)[2]

Defendants argue that because the jury found that defendants did not breach any contract with MyGallons and that Zenacon breached a contract with Voyager, the statements that there was no agreement or affiliation with MyGallons are substantially true. (Mem., DE # 243, at 5.) However, as MyGallons observes, whether there was an agreement between defendants and MyGallons is not the only statement at issue. The desk statements also contain representations about the authorization to use Voyager's name and ongoing negotiations between the companies. Because there was a dispute as to the basis of these representations and the representation about the lack of affiliation, as well as the existence of any agreement between defendants and MyGallons, the court submitted the defamation issue to the jury. A reasonable jury could have found one or more of defendants' statements to be false in order to answer the third issue, "Did the defendants defame MyGallons LLC?," in favor of MyGallons. The truth of every statement defendants published is not dependent upon the existence of any contract or agreement between defendants and MyGallons. As such, the court cannot set aside the jury's finding of liability

---

[2]Citations are to exhibits at trial. At trial, upon defendants' oral motion for judgment as a matter of law at the conclusion of plaintiffs' case-in-chief, plaintiffs identified these exhibits as the ones containing the defamatory statements.

3

simply based on the jury's findings on the breach of contract claims.

Next, defendants argue that judgment should be entered in their favor because MyGallons failed to prove that the defamatory statements caused special damages, i.e. lost profits or general decline in business, and that nothing other than the defamatory statements caused those damages. (Mem., DE #243, at 8-12.) With regard to damages for defamation, the court instructed the jury, in relevant part, as follows:

> In determining what amount, if any, to award, you are instructed that if the defamatory statement injures the credit, property, or business of MyGallons LLC, it is known as defamation per se. In such a case, general damages are presumed, and MyGallons LLC is not required to prove actual harm to its reputation and standing in the community. If MyGallons LLC seeks to recover for actual monetary loss, it must prove by a preponderance of the evidence that the monetary loss is directly attributable to the defamatory statement or communication. A business can show this loss by evidence of the loss of specific sales. A business can also show monetary loss by proving a general decline in business so long as the general decline in business is shown to be the result of the defendants' defamatory statement or communication. Such lost profits, as they are called, may only be awarded if the amount is reasonable and not speculative. Only when evidence is offered estimating anticipated profits with reasonable certainty may damages for lost profits be awarded.

(DE # 229, at 25.) The issue pertaining to this instruction, issue six, reads: "What amount, if any, is MyGallons LLC entitled to recover for defamation?" (Id.) In response, the jury awarded the lump sum of $4,000,000.

The initial problem with defendants' argument is the assumption that the jury in fact awarded MyGallons special damages. It is possible that a reasonable jury could have compensated MyGallons only for its reputational harm, which no one disputes is presumed in the case of defamation *per se*. Alternatively, a reasonable jury could have awarded MyGallons some portion for reputational harm and some other portion for special damages. Because the jury was

4

not required to specifically identify what amount, if any, it was awarding for general damages and special damages, the court would be speculating if it concluded the jury award was based solely on special damages. The court cannot vacate the entire damages award as a matter of law on this basis.

Furthermore, even assuming that the jury awarded MyGallons special damages, defendants are incorrect that MyGallons was required to prove that there was no other factor which caused the pecuniary harm aside from the defamatory statement(s).

> A plaintiff may recover special damages if he or she proves that the defamatory publication is the legal cause of any actual and special pecuniary loss. [*Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 258-59 (Minn. 1980)]; Restatement (Second) of Torts § 622 (1977) ("One who is liable for . . . a slander actionable per se . . . is also liable for any special harm legally caused by the defamatory publication."). A defamatory publication actionable per se is the legal cause of special harm if "it is a substantial factor in bringing about the harm." Restatement (Second) of Torts § 622A(a) (1977).

Longbehn v. Schoenrock, 727 N.W.2d 153, 160 (Minn. Ct. App. 2007). "It is not necessary, however, that the defamation be the sole cause of the special harm, so long as it has played a substantial part in bringing it about." Restatement (Second) of Torts § 622A, cmt. b (1977).

Two of the cases on which defendants rely to urge imposition of a heightened causation requirement pertain to claims of product disparagement. See LensCrafters, Inc. v. Vision World, Inc., 943 F. Supp. 1481, 1490 (D. Minn. 1996) (recognizing that to recover for product disparagement, "a plaintiff must be able to prove special damages 'in the form of pecuniary loss directly attributable to defendant's false statements'" and if the plaintiff cannot show loss of specific sales, the plaintiff may prove "a general decline of business, provided that the decline can be shown to have resulted from the defendant's disparaging statements, and not because of other possible causes" (quoting Advanced Training Sys., Inc. v. Caswell Equip. Co., 352 N.W.2d

5

1, 7-8 (Minn. 1984)). Another case on which defendants rely, Longbehn, and from which the court quotes above, is a defamation case and does not contain language about a plaintiff having to prove anything more than legal causation. 727 N.W.2d at 159-60. The Minnesota Court of Appeals has discounted the only other case on which defendants rely, Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483 (8th Cir. 1992), cert. denied, 506 U.S. 1080 (1993), for the Eighth Circuit's failure to "distinguish between product and business disparagement." Imperial Developers, Inc. v. Seaboard Sur. Co., 518 N.W.2d 623, 628 n.2 (Minn. Ct. App. 1994). The claim at issue here is one of business defamation, which stands on the same footing as an individual defamation claim. See Advanced Training, 352 N.W.2d at 10 (holding that a corporation may recover for libel against it by showing that "defendant's written statements directly tended to affect the credit, property or business of the corporate plaintiff" and the corporate plaintiff is not required to also prove special damages).

In addition, contrary to defendants' current suggestion,[3] (see Mem., DE # 243, at 10-11), MyGallons was not required to offer expert testimony on the issue of causation, see Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1339-40 (8th Cir. 1997) (recognizing, in product disparagement case, that there is no "rule of law that the testimony of a company's principals is too speculative to establish a material fact," e.g., the exclusive cause of the company's damages; "[r]ather, [the cases finding the plaintiff had not shown causation] focus on the lack of proof specific to each case" (citations omitted)); Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 259 (Minn. 1980) (holding individual plaintiff had presented sufficient evidence, although not overwhelming, through his own testimony of a casual connection between the defamatory

---

[3] As the court recalls, during argument on their motion for judgment as a matter of law at the conclusion of plaintiffs' case-in-chief, defendants acknowledged that expert testimony on causation is not required.

statements and his actual pecuniary loss). Steven Verona, MyGallons's founder and CEO, testified that upon learning MyGallons would not be using the Voyager network, he decided to "regroup and . . . go with another payment network . . . ." (Verona Test., DE # 240, at 101.) Verona explained that he thought doing so "wasn't going to be that much of a challenge . . . with Wright Express which is Voyager's biggest competitor or with Comdata and Master Card or Visa or another payment network." (Id.) Verona stated he and partner Bob Racusin "called basically every payment network that we could find[,]" and "ultimately, none of them were willing to do business with us at that time." (Verona Test., DE # 241, at 138, 139.) In addition to requesting general information about the MyGallons program, companies would ask "what happened with U.S. Bank." (Id. at 138-39.) A number of companies turned Verona and Racusin down immediately, without a meeting or further communication. (Id. at 138.) Verona also enlisted the assistance of brokers to find an alternative payment processor. (Id. at 137, 141-42.) To this day, MyGallons still does not have a payment processor, (id. at 162), which means it cannot process its members' transactions at the gas pump, (see Verona Test., DE # 240, at 16; Verona Test., DE # 241, at 161-62), and which is obviously necessary for the program to function as envisioned. A reasonable jury could have concluded that defendants' defamatory statements caused MyGallons's inability to secure an alternative card processing network which, in turn, caused MyGallons to suffer pecuniary loss. In sum, defendants are not entitled to judgment as a matter of law on the issue of defamation damages.

Alternatively, defendants request a new trial or remittitur on defamation damages

pursuant to Rule 59.[4] Under Minnesota law,[5]

> [a] reviewing court should not set aside a jury verdict on damages "unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Raze v. Mueller*, 587 N.W.2d 645, 648 (Minn. 1999) (quotation omitted). But the district court "has broad discretion in determining whether to set aside a verdict as being excessive and should not hesitate to do so where it feels the evidence does not justify the amount." *Mrozka v. Archdiocese of St. Paul & Minneapolis*, 482 N.W.2d 806, 813 (Minn. App. 1992), *review denied* (Minn. May 24, 1992).

Longbehn, 727 N.W.2d at 162.

Defendants argue that they are entitled to a new trial on damages because there is no support for a $4,000,000 award of general damages based on MyGallons's reputational harm. (Mem., DE # 243, at 13-15.) If the jury had awarded $4,000,000 exclusively for general damages, the court might be inclined to agree with defendants' position that such an award is excessive given MyGallons's relatively short existence and compared to awards in similar defamation cases. See, e.g., Republic Tobacco Co. v. N. Am. Trading Co., 381 F.3d 717 (7th Cir. 2004) (under Illinois law, holding district court abused its discretion in remitting presumed damages for defamation *per se* from $8.4 million to $3.36 million for excessiveness and finding $1 million "more appropriate" and "sizeable enough to compensate [the plaintiff tobacco company] for damage that we presume was caused to its reputation in the tobacco industry and the harm that we presume was done to the business relationships it cultivated over the years"); Lundell Mfg. Co. v. Am. Broad. Cos., 98 F.3d 351 (8th Cir. 1996) (under Iowa law, reinstating

---

[4] In their motion, defendants also cite Rule 60 as a basis to correct the judgment. Defendants do not suggest that Rule 60 alters the court's analysis in any way, and therefore, the court focuses on whether relief pursuant to Rule 59 is warranted.

[5] Because Minnesota law governs the defamation claim, it also governs the court's assessment of the damages verdict. See Stamathis v. Flying J, Inc., 389 F.3d 429, 438 (4th Cir. 2004) (in defamation case, recognizing that the court must look to state law to determine whether the verdict should be set aside as excessive).

8

jury award of $900,000 for damage to manufacturer's reputation due to national news story falsely reporting that manufacturer's machine "does not work"), cert. denied, 520 U.S. 1186 (1997); Pham v. Le, Nos. A06-1127, A06-1189, 2007 WL 2363853 (Minn. Ct. App. Aug. 21, 2007) (noting jury verdict of $280,000 for past and future harm to business owner's reputation where defendants organized boycott of plaintiff's business and made defamatory statements such as plaintiff is a "Communist lackey"),[6] review denied (Minn. Nov. 13, 2007), cert. denied, 552 U.S. 1320 (2008); Wellington Funding & Bus. Consultants, Inc. v. Continental Grain Co., 686 N.Y.S.2d 425 (N.Y. App. Div. 1999) (finding $1,000,000 compensatory damages for presumed damage to business reputation "not impermissibly speculative" where letter to nonparty bank "inaccurately conveyed the impression that the defendant subsidiaries had not authorized plaintiff to represent that they were interested in its loan financing program"); Knox v. Taylor, 992 S.W.2d 40 (Tex. App. 1999) (affirming $750,000 award for injury to owner of bond agency's reputation who was defamed by a memorandum the president of a competitor company sent to the bond agency's client). Pure non-economic awards in excess of $1,000,000 are normally reserved for particularly egregious circumstances, such as in cases where there is mental suffering in addition to reputational harm. See, e.g., Cantu v. Flanigan, 705 F. Supp. 2d 220 (E.D.N.Y. 2010) (determining jury award of $150,000,000 for non-economic damages for defamation of businessman resulting from worldwide publication of magazine story based on defendant's false accusations against businessman was not excessive under New York law); Prozeralik v. Capital Cities Commc'ns, Inc., No. 48424, 1995 WL 17810583 (N.Y. Sup. Ct. Mar. 24, 1995) (entering judgment on jury award of $6,000,000 for injury to plaintiff's reputation and

---

[6]This case is the only similar defamation case the court could locate that was decided under Minnesota law.

standing in the community), aff'd as modified, 635 N.Y.S.2d 913 (N.Y. App. Div. 1995) (finding award was not excessive).

However, even assuming that a $4,000,000 award for reputational harm is excessive under the facts here, the court will not order a new trial on damages on this basis. Just as the court would be speculating if it concluded the jury award MyGallons special damages (as discussed above), the court would likewise be speculating if it presumes that the jury awarded $4,000,000 to MyGallons exclusively for its reputational harm. Again, the jury awarded a lump sum for all defamation damages, and the jury award may be based not only on MyGallons's reputational harm but also on its economic harm.

There is no doubt that the size of the lump sum award is significant. Yet, accepting MyGallons's evidence, the harm it suffered was significant. Verona testified that publicity surrounding MyGallons's launch was initially extremely favorable. (Verona Test., DE # 240, at 94-95.) Once defendants issued the defamatory statements, all publicity turned negative and was widely communicated. (Id. at 102, 106, 107, 108; Verona Test., DE # 241, at 127-29.) Having found defendants liable for defamation, a reasonable jury could have awarded significantly more than nominal damages for MyGallons's reputational harm. Also, the jury heard the testimony of experts about MyGallons's lost profits. MyGallons's experts presented evidence that MyGallons lost in excess of $200,000,000 in profits over a three-year period. Defendants vigorously cross-examined these experts, and their own experts took issue with the feasibility of MyGallons's hedging plan (which affects the viability of the entire program) and with the sales and financial forecasts of MyGallons's experts. As the court instructed, the jury was entitled to give whatever weight to each expert opinion that they felt the opinion deserved. (DE # 229, at 8.) Obviously, the jury did not fully credit MyGallons's expert testimony. Even discounting the testimony,

10

given the evidence of the reputational harm and pecuniary harm, the verdict is within the range a reasonable jury could have awarded. Thus, considering the damages award to MyGallons as a whole, the court cannot conclude that the verdict is excessive or manifestly and palpably contrary to the evidence.

Defendants also contend that the court should order a new trial based on the purportedly improper admission of MyGallons's expert testimony. (Mem., DE # 243, at 15-17.) The court has previously considered defendants' arguments pretrial and/or during the trial and will not revisit its prior rulings on the issue.

Finally, defendants request remittitur as an alternative to a new trial on damages. Even assuming that the court agreed with defendants that the verdict in some aspect is excessive, the court cannot use remittitur under the circumstances here. As previously noted, the jury awarded MyGallons a lump sum for damages for defamation. Because the jury was not asked to separately identify what amount it was awarding for reputational harm, lost profits, or other monetary loss, remittitur cannot be used to correct the verdict. See Arnold v. E. Air Lines, Inc., 681 F.2d 186, 206 (4th Cir. 1982) (holding trial court should have ordered new trial on damages, not remittitur, where post-verdict, the trial judge recognized he had erred in submitting a particular item of damages: "[w]here, as in this case, a jury's undifferentiated lump sum damage award is made up of a number of properly compensable items and one noncompensable item, use of remittitur involves judicial correction of a jury's verdict by a process of determining 'an unknown fraction of an unknown portion of an unknown whole'" (footnote and citation omitted)), cert. denied, 460 U.S. 1102 (1983); Johns v. Stilwell, No. 3:07-cv-00063, 2009 WL 2390991, *6 (W.D. Va. Aug. 4, 2009) (recognizing it could not use remittitur where "the jury awards a single undifferentiated sum of damages for multiple compensable legal violations and

11

there is no specific, identifiable amount of damages that was erroneously included in the award").

Having concluded that no ground exists to disturb the jury verdict in favor of MyGallons, defendants' motion is DENIED.

This 6 February 2012.

                                                W. Earl Britt
                                                Senior U.S. District Judge